**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **NAM QUOC NGUYEN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-26-1110-HE** |
| | ) | |
| **TODD BLANCHE, Attorney General, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Nam Quoc Nguyen, a noncitizen,[1] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[2] United States District Judge Joe Heaton referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 11, and Petitioner replied, Doc. 12. So, the matter is at issue.

---

[1] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons set forth below, the undersigned recommends the Court grant Petitioner's request for habeas corpus relief, in part, and order his immediate release subject to the terms of his prior Order of Supervision (OOS).

## I. Factual background and procedural history.

Petitioner is a citizen of Vietnam who entered the United States "on or about November 29, 1989, as a refugee." Doc. 11, Ex. 1, at 2; Doc. 1, at 1. "On December 28, 1990, Petitioner was granted lawful permanent resident status." Doc. 11, Ex. 1, at 2. In 1993, he was convicted of aggravated assault in Kansas state court and sentenced to serve three to eight years in prison. *Id.* "On July 15, 1993, [the Department of Homeland Security (DHS)] issued a Notice to Appear [(NTA)] to Petitioner," charging him as removable under § 237(a)(2)(A)(i), (iii) of the Immigration and Nationality Act (INA). *Id.*[3]

On December 15, 1993, an Immigration Judge (IJ) ordered Petitioner removed to Vietnam and the removal order became administratively final on

---

[3] These statutory provisions are codified in the United States Code at 8 U.S.C. § 1227(a)(2)(A)(i), (iii). Section 1227(a)(2)(A)(i) provides that any noncitizen "convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of a[] [noncitizen] provided lawful permanent resident status . . .) after the date of admission, and . . . is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." *Id.* § 1227(a)(2)(A)(i). Section 1227(a)(2)(A)(iii) provides that any noncitizen "convicted of an aggravated felony at any time after admission is deportable." *Id.* § 1227(a)(2)(A)(iii).

February 24, 1994. *Id.*; Doc. 1, at 2. "On or about July 11, 1995, [Enforcement Removal Operations (ERO)] sought guidance and procedures for requesting Travel Documents for Vietnamese [citizens] and a Travel Document request [for Petitioner] was made." Doc. 11, Ex. 1, at 2. "The Vietnamese Embassy reported no status change on [the] request until May of 1998." *Id.* In August of 1998, Petitioner was released from DHS custody on his own recognizance "with instructions to report to [the] OKC Field Office." *Id.* at 3.[4]

Respondents concede "Petitioner has consistently complied with check-ins as directed by DHS," albeit "with a few missed check-ins, from his release in 1998 until his latest re-detention on April 30, 2026." *Id.* Respondents note that "on November 21, 2018, Petitioner was given 3 months to produce a copy of a passport application and receipt showing that it was turned into the Vietnamese Consulate." *Id.* at 3. But "Petitioner failed to provide any proof of compliance by February 20, 2020" or "any evidence of applications for travel document under his own volition." *Id.*

[4] Petitioner states he was placed on an OOS "pursuant to 8 C.F.R. § 241.5 and 8 C.F.R. § 241.13 due to evidence in Petitioner's file that demonstrated there was no significant likelihood of his removal to Vietnam in the reasonably foreseeable future." Doc. 1, at 2. The parties have not provided a copy of Petitioner's OOS.

On April 30, 2026, Immigration & Customs Enforcement (ICE) detained Petitioner "at his regularly scheduled check-in appointment . . . despite receiving no notice, [or a] chance to be heard." Doc. 1, at 2; Doc. 11, Ex. 1, at 4. Respondents state, "Petitioner was provided and signed a Notice of Revocation of Release form." Doc. 11, Ex. 1, at 4.[5] Petitioner remains detained at the Cimarron Correctional Facility in Cushing, Oklahoma. Doc. 1, at 4.

Respondents maintain that "[o]n April 16, 2026, the [Headquarters Post-order Detention Unit (HQPDU)] determined that, because of the changed circumstances, there was and is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future pursuant to 8 C.F.R. § 241.13(i)." Doc. 11, Ex. 1, at 4.

## II. Petitioner's claims.

Petitioner raises four grounds for relief:

> Ground One: Declaratory relief that he is detained pursuant to 8 U.S.C. § 1231(a)(1); he has "demonstrated to ICE's satisfaction that there is no significant likelihood of his removal in the reasonably foreseeable future"; ICE did not rebut his demonstration; and that he may not be re-detained until ICE rebuts his demonstration.

[5] Respondents have not provided the Court with a copy of the Notice of Revocation form, but Petitioner does not dispute Respondents' averment in his reply. *See* Doc. 12, at 7 ("They further acknowledge that Petitioner was served with a Notice of Revocation of Release issued pursuant to the post-final-order detention regulations.").

> Ground Two: A violation of the INA by failure of Respondents to comply with 8 U.S.C. § 1231(a)(1)-(3) and 8 C.F.R. § 241.13(g), (i)(2)-(3).
>
> Ground Three: Unlawful detention in violation of the Fifth Amendment (Due Process).
>
> Ground Four: Respondents violated the Administrative Procedure Act (APA) by failing to provide an explanation for Petitioner's re-detention or comply with relevant regulations.

Doc. 1, at 25-29. Petitioner asks the Court to issue an emergency preliminary order prohibiting Respondents from transferring him to Texas and requiring Respondents to provide 72-hour notice of any intended movement of his person. *Id.* at 28.[6] Petitioner also requests an emergency preliminary order requiring Respondents to provide him due process before removing him to a third country. *Id.* at 28-29.

Petitioner asks the Court to order Respondents to immediately release him subject to the conditions of his prior OOS; permanently enjoin Respondents from re-detaining him unless they obtain a travel document for his removal; and permanently enjoin Respondents from removing him to a third country without due process. *Id.* at 29. Petitioner additionally seeks attorney fees and costs pursuant to the Equal Access to Justice Act (EAJA), 5

---

6 The Court addressed Petitioner's request in its Order for Response. Doc. 8, at 2.

U.S.C. § 504 and 28 U.S.C. § 2412. *Id.*

## III. Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort,* 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis,* 533 U.S. 678, 687-88 (2001)); *see also Zadvydas*, 533 U.S. at 687 ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases.").

## IV. Analysis.

### A. Respondents unlawfully revoked Petitioner's OOS.

In Ground Two, Petitioner asserts that Respondents violated the INA and its regulations when they re-detained him after his release pursuant to an OOS. Doc. 1, at 26. The undersigned finds the Government failed to make the proper finding that changed circumstances necessitated revoking Petitioner's OOS as required by 8 C.F.R. § 241.13(i)(1).

ICE may revoke an OOS and "return the [noncitizen] to custody" when, "on account of changed circumstances . . . there [becomes] a significant likelihood [of] the [noncitizen's] remov[a]l in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1). "These regulations clearly indicate that, upon revocation of supervised release, it is *the Government's* burden to show a significant likelihood that the noncitizen may be removed." *Hall v. Nessinger,* 2026 WL 18583, at *6 (D.R.I. Jan. 2, 2026).

Relying on the declaration of Deportation Officer Micheal L. Thompson, Respondents maintain that:

> For the fiscal year of 2024, ERO removed 58 Vietnamese Citizens to Vietnam.
>
> For the fiscal year of 2025, ERO removed 699 Vietnamese Citizens to Vietnam, 102 of which were "pre-1995" aliens.
>
> As of March 15, 2026, for the fiscal year of 2026, ERO has removed 632 Vietnamese Citizens to Vietnam, 110 of which were "pre-1995" aliens.
>
> The Government of Vietnam has issued every travel document requested since February of 2025.

Doc. 11, Ex. 1, at 3. First, "Courts have found that such increase in frequency of removals alone does not demonstrate significant likelihood of removal in the reasonably foreseeable future." *Pham v. Bondi,* No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) (collecting cases). While "Courts

have recognized that Vietnam is now considering repatriation requests from the United States," it is still done "on a case-by-case basis." *Duong v. Tate*, 2025 WL 933947, at *4 (S.D. Tex. Mar. 27, 2025). And "[t]he increase in removals to Vietnam in the past year does not indicate Petitioner himself was significantly likely to be removed at the time of his re-detention." *Nguyen v. Dep't of Homeland Sec.,* No. CIV-26-87-R, 2026 WL 1506428, at *6 (W.D. Okla. May 29, 2026).

Respondents have not provided the Court with any information about how ICE has "consider[ed] all the facts of the case including . . . the history of the alien's efforts to comply with the order of removal . . . and the alien's assistance with [ICE's removal] efforts" under 8 C.F.R. § 241.13(f). The sole justification for ICE's revocation of Petitioner's release appears to be that it has submitted a travel document request to Vietnam, which is still pending. *See* Doc. 11, Ex. 1, at 4. But "[t[he mere request of a travel document by ICE is not a changed circumstance supporting re-detention under § 241.13." *Choy v. Woosley*, 2026 WL 324601, at *5 (W.D. Ky. Feb. 6, 2026).

Finally, Respondents rely on HQPDU's conclusory finding of changed circumstances, but Officer Thompson's declaration does not explain what those circumstances were. And Courts have rejected such conclusory statements as insufficient to justify revocation of release. *See Sarali A. v. Bondi,* 803 F. Supp.

3d 775, 787 (D. Minn. 2025) ("Simply to say that circumstances had changed or there was significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3).").

The record before the Court establishes that ICE failed to find changed circumstances necessitated the revocation of Petitioner's release, and as a result, violated its own regulations. *See Qui v. Carter,* 2025 WL 2770502, at *3-4 (D. Kan. Sept. 26, 2025) (holding that ICE violated its regulations when revoking existing OOS as it did not "provide[] any details or statistics or evidence to support" a determination of changed circumstances). As a result of the lack of apparent determination of changed circumstances necessitating revocation, the undersigned finds that ICE's revocation of Petitioner's OOS was unlawful. *Id.* at *4 (finding that failure to properly revoke the petitioner's OOS "pursuant to the applicable regulations" rendered revocation ineffective). So, the Court recommends Petitioner's immediate release subject to the same OOS that governed his prior release.

**B. Petitioner's remaining claims.**

The undersigned declines to address Petitioner's APA claim and due process claim as the Court can grant him the relief he seeks based on his regulatory violation claim. Additionally, the undersigned declines to address Petitioner's request for declaratory relief as any declaratory relief will be rendered moot by the adoption of this Report and Recommendation.

As for Petitioner's requests for injunctive relief, the Court should deny Petitioner's requests for the Court to:

- Permanently enjoin Respondents from re-detaining him under 8 C.F.R. § 241.13(i)(2)-(3) unless and until Respondents have obtained a travel document allowing for his removal from the United States;
- Permanently enjoin Respondents from re-detaining him under § 241.13(i)(2)-(3) for more than three days after receiving a travel document; and to
- Permanently enjoin Respondents from deporting him to an allegedly safe third country without first giving him due process in the form of a full merits hearing for asylum, withholding of removal, and deferral of removal under the convention against torture (CAT) before an IJ relating to the proposed country of removal with a right to an administrative appeal to the Board of Immigration Appeals.

Doc. 1, at 29. "[F]uture decision[s] to detain . . . are appropriately committed to the executive branch, which—subject to compliance with applicable law—has substantial latitude in the execution of immigration enforcement decisions, including as to noncitizens subject to orders of removal." *Funes v. Francis*, 2025 WL 3263896, at *26 (S.D.N.Y. Nov. 24, 2025) (first citing *United States v. Texas*, 599 U.S. 670, 679 (2023); and then citing *Garland v. Aleman Gonzalez*, 596 U.S. 543, 546-48 (2022)).

## V. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's petition for writ of habeas corpus, Doc. 1, and order his immediate release from custody subject to the terms of his unlawfully revoked OOS.[7] **The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within five business days of the Court's order** and to promptly provide a copy of the Court's order to counsel for the Warden of the Cimarron Correctional Facility.

[7] As to Petitioner's request for EAJA fees, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention").

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by August 3, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[8] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 29th day of July, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

8 Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").